# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Cheryl Ann Sarver, as Personal Representative of the Estate of Gordon Jay Sarver,<br><br>                   Plaintiff,<br><br>  v.<br><br>Claiborne Senior Living, LLC,<br><br>                   Defendant. | CIVIL ACTION NO.: 2:23-cv-02051-DCN<br><br>**COMPLAINT** |

Plaintiff Cheryl Ann Sarver, as the Personal Representative of the Estate of Gordon Jay Sarver, ("Plaintiff"), by and through her undersigned counsel, complains of Defendant Claiborne Senior Living, LLC ("Defendant"), as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is domiciled in and a citizen of South Carolina.

2.     Plaintiff resides in Berkeley County, South Carolina.

3.     On April 4, 2023, in case number 2023-ES-08-369, the Berkeley County Probate Court appointed Plaintiff as the Personal Representative of the Estate of Gordon Jay Sarver.

4.     Decedent Gordon Jay Sarver ("Mr. Sarver") was domiciled in and a citizen of South Carolina at all times relevant hereto.

5.     Defendant is a limited liability company organized in, operating under the laws of, and operating from a principal place of business in Mississippi.

6.     Defendant's 2023 LLC Annual Report filed with the Mississippi Secretary of State

identifies VH Management, LLC ("VH Management") as the sole manager and member of Defendant.

7. VH Management is a limited liability company organized in, operating under the laws of, and operating from a principal place of business in Mississippi.

8. VH Management's 2023 LLC Annual Report filed with the Mississippi Secretary of State identifies Robert O. Tatum, Jr. as the sole manager and member of VH Management.

9. Robert O. Tatum, Jr. is a citizen of Mississippi.

10. Defendant is a citizen of Mississippi.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different States and the matter in controversy exceeds $75,000, exclusive of interests and costs.

12. The claims in this action arise from and relate to acts, omissions, and injuries that occurred in Dorchester County, South Carolina.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

14. Plaintiff was married to Mr. Sarver.

15. Mr. Sarver suffered from dementia which impaired his memory, hindered his ability to complete the normal tasks of daily life, and rendered him unable to attend to his own safety and welfare.

16. As the result of his dementia, Mr. Sarver required constant supervision and a safe physical environment.

17. Plaintiff was unable to provide Mr. Sarver with the constant supervision and safe physical environment he required.

18. Plaintiff placed Mr. Sarver in a facility but later concluded the facility was not providing adequate supervision and a safe physical environment for Mr. Sarver, including not providing adequate supervision and physical safety in relation to Mr. Sarver's elopement from and numerous attempts to elope from the facility.

19. Seeking supervision and a safe physical environment for Mr. Sarver, Plaintiff researched and visited several memory care facilities.

20. Defendant operates and at all relevant times operated a memory care facility known at "The Claiborne at Brickyard Crossing" (the "Facility") at 112 Grandview Drive in Summerville in Dorchester County, South Carolina.

21. The construction of the Facility was completed the Facility opened and began operating in 2022.

22. Through its website, www.theclaiborne.com/brickyard-crossing, Defendant at all relevant times did and does hold itself out to the public as providing "the secured environment and elevated care of a comprehensive Memory Care program."

23. Through its website, www.theclaiborne.com/brickyard-crossing/memory-care, Defendant at all relevant times did and does hold itself out to the public as providing "additional support services for memory care residents," including "secure environment," "24/7 staff support," and "emergency response."

24. Plaintiff visited the Facility and spoke to Defendant's employees at the Facility regarding Defendant's ability to provide the constant supervision and safe physical environment

Mr. Sarver needed.

25.     Defendant's employees stated to Plaintiff that the Facility was a memory care facility with the personnel and physical components necessary to ensure the safety of residents.

26.     Plaintiff informed Defendant's employees of Mr. Sarver's history of elopement and attempted elopements.

27.     Defendant's employees ensured Plaintiff that the Facility was equipped to keep Mr. Sarver safe even with his history of elopement and attempted elopements.

28.     The ability of Defendant to keep Mr. Sarver safe was the deciding factor in Plaintiff moving Mr. Sarver to the Facility and placing him in the custody and supervision of Defendant.

29.     On or about October 4, 2022, Plaintiff moved Mr. Sarver into the memory care unit of the Facility.

30.     Mr. Sarver was a resident of the memory care unit at the Facility from on or about October 4, 2022, through his death on February 17, 2023.

31.     Defendant had a duty to provide its memory care residents, including Mr. Sarver, with the reasonable supervision and physical environment necessary to ensure the safety of the residents.

32.     At all times relevant hereto, Defendant knew or should have known that Mr. Sarver suffered from dementia, suffered from progressive or persistent loss of intellectual functioning, suffered from impairment of memory and abstract thinking, was unable to complete the normal tasks of daily life, was unable to attend to his own safety and welfare, and required constant supervision and a safe physical environment.

33.     Defendant knew of Mr. Sarver's propensity to elope.

34. Defendant knew of the danger of elopement for persons suffering from dementia.

35. Notwithstanding Defendant's knowledge, Defendant failed to exercise due care in supervising Mr. Sarver and providing a physical environment for Mr. Sarver.

36. On February 17, 2023, around 6:30 p.m., Mr. Sarver walked through an unlocked door at the Facility and exited the Facility.

37. Walking unaccompanied on the uneven exterior ground of the Facility, Mr. Sarver fell, hit his head and face on the sidewalk, and suffered severe injuries to which he succumbed more than a week later.

38. Upon Mr. Sarver exiting the Facility, an alarm sounded informing Defendant's employees of an opened an exit door from the memory care unit of the Facility.

39. One of Defendant's employee responded to the alarm by checking one of the exit doors, and the employee did not see Mr. Sarver.

40. Defendant's employee then checked a second door and saw Mr. Sarver laying on or near a sidewalk at the bottom of an incline and bleeding from the head.

41. Defendant's employees did not find Mr. Sarver until more than five minutes passed from when he exited the Facility.

42. When he was found, Mr. Sarver was conscious and experiencing extreme pain.

43. Mr. Sarver was transported to the hospital by ambulance and remained in the hospital for on or around five days before succumbing to his injuries.

44. Mr. Sarver's injuries, hospitalization, and death were the direct and proximate result of Defendant's negligent provision of supervision and facilities for Mr. Sarver.

## FOR A FIRST CAUSE OF ACTION
### Negligence

45. Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth herein.

46. Defendant had a duty to use reasonable care in the operation of the Facility in accordance with all laws, statutes, regulations, ordinances, industry standards, customs, and practices related to the operation of a memory care facility.

47. Defendant had a duty to provide reasonably adequate supervision of Mr. Sarver.

48. Defendant had a duty to undertake all reasonable measures to prevent Mr. Sarver from eloping from the Facility.

49. Defendant had a duty to have and carry out policies and procedures to prevent Mr. Sarver from eloping from the Facility.

50. Defendant had a duty to undertake all reasonable measures to timely search for, locate, and return to safety Mr. Sarver upon learning he eloped.

51. Defendant had a duty to have and carry out policies and procedures for timely searching for, locating, and returning to safety Mr. Sarver upon learning he may have eloped.

52. Defendant failed to provide doors that could not be opened by residents of the Facility or at a minimum, delayed egress locks, both of which are reasonable measures for preventing the elopement of Mr. Sarver.

53. Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in operating the Facility in a manner permitting Mr. Sarver's elopement and causing his injuries and death.

54. Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless

in operating the Facility in a physical condition permitting Mr. Sarver's elopement and causing his injuries and death.

55.     Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in failing to use reasonable care in the operation of the Facility in accordance with all laws, statutes, regulations, ordinances, industry standards, customs, and practices related to the operation of a memory care facility.

56.     Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in failing to provide reasonably adequate supervision of Mr. Sarver.

57.     Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in failing to undertake all reasonable measures to prevent Mr. Sarver from eloping from the Facility.

58.     Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in failing to have and carry out policies and procedures to prevent Mr. Sarver from eloping from the Facility.

59.     Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in failing to timely search for, locate, and return to safety Mr. Sarver upon learning he eloped.

60.     Defendant was negligent, grossly negligent, careless, willful, wanton, and reckless in failing to have and carry out policies and procedures for timely searching for, locating, and returning to safety Mr. Sarver upon learning he eloped or may have eloped.

61.     As the direct and proximate result of Defendant's negligent acts and omissions, Mr. Sarver suffered severe and permanent injuries, pain and suffering, a diminished quality of life, and ultimately, death.

62. Plaintiff is entitled to an award of punitive damages.

## FOR A SECOND CAUSE OF ACTION
### Survival

63. Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth herein.

64. Pursuant to the survival rights of action in Section 15-9-90 of the South Carolina Code and as the result of the aforementioned negligence of Defendant, Plaintiff is entitled to prosecute the above-referenced cause of action as the Personal Representative of the Estate of Gordon Jay Sarver.

65. Defendant's acts and omissions set forth herein caused Mr. Sarver to suffer conscious pain, suffering, fear, paralysis, mental anguish, emotional distress, and loss of enjoyment of life.

66. Defendant's acts and omissions set forth herein caused Mr. Sarver to incur substantial medical and hospital expenses to treat his injuries and trauma with such treatment, including but not limited to hospitalization, surgeries, therapies, medications, medical devices, and medical transportation.

67. Plaintiff is entitled to an award of punitive damages.

## FOR A THIRD CAUSE OF ACTION
### Wrongful Death

68. Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth herein.

69. After surviving for on or around five days following his fall, Mr. Sarver died from injuries he suffered as the direct and proximate result of Defendant's negligent acts and omissions.

70.   As the direct and proximate result of the death of Mr. Sarver, his heirs have been deprived of his future love, comfort, affection, presence, companionship, and consortium and have endured mental anguish, thus suffering a pecuniary loss. Such claim is made to payment of damages as allowed by Section 15-59-10 of the South Carolina Code.

WHEREFORE, Plaintiff demands a jury trial and prays for judgment against Defendant for actual and punitive damages and for such other and further relief as this Court deems just and proper.

THE STEINBERG LAW FIRM, LLC
P.O. Box 2670
Summerville, SC 29485
(843) 871-6522 - office
(843) 871-8565 - facsimile

By:   s/Elliotte Quinn
Steven E. Goldberg
Fed. Bar No.: 6290
SC Bar No.: 66446
sgoldberg@steinberglawfirm.com

F. Elliotte Quinn IV
Fed. Bar No.: 12563
SC Bar No.: 100450
equinn@steinberglawfirm.com

*Attorneys for Plaintiff*